UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JANE L. REYNOLDS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 07-5-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the questions whether the plaintiff

effectively waived her right to counsel at the hearing before the administrative law judge, whether the

administrative law judge developed the record sufficiently, whether the administrative law judge

properly considered the duration and severity of the plaintiff's impairments and whether the

administrative law judge was required to consider a closed period of benefits for which the plaintiff

had not applied.  I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920;

*Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative

law judge found, in relevant part, that the plaintiff suffered from Type II diabetes mellitus and

neuralgias, but that these impairments, whether considered separately or in combination, were not

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on October 5, 2007, pursuant to
(*continued on next page*)

severe because they had not significantly limited or were not expected to significantly limit the plaintiff's ability to perform basic work-related activities for twelve consecutive months, Findings 2-3, Record at 13; and that the plaintiff accordingly had not be under a disability as that term is defined in the Social Security Act since the date the application was file, Finding 4, *id*. at 15. The Appeals Council declined to review the decision, *id*. at 4-6, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential process, at which stage the plaintiff bears the burden of proof. However, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28).

---

Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, (*continued on next page*)

## Discussion

### A.  Waiver of Counsel and Development of the Record

The plaintiff first contends that she did not effectively waive her right to counsel at the hearing before the administrative law judge.  Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 8) at 1-2.  The following colloquy took place at the outset of the recorded hearing:

> ALJ: . . . I'm sitting in the matter of the Title 16 appeal of Jane Reynolds. Ms. Reynolds' Social Security Number is [redacted] . . . . Ms. Reynolds is here without an attorney or representative.  In an off-the-record discussion immediately [prior] to the hearing, Ms. Reynolds indicated to me that she does not have an attorney [or] representative.  She does not wish and she has no interest at all whatsoever of obtaining representation.  Initially she told me that she did not have the resources or money, finances, to obtain an attorney or representative, and I, I explained to her about contingency fee agreements or arrangements where she would not have to pay unless she received benefits, and that would be a percentage with a maximum of the back benefits owed.  And she indicated again that she [had] absolutely no interest in representation and wanted to go forward on her own.  Is that correct, Ms. Reynolds?
> CLMT:  Yes, it is.
> ALJ:  Okay . . . I'll allow you to waive your right to an attorney or representative at this time.

Record at 276-77.  The First Circuit requires proof of prejudice or unfairness attributable to self-representation in order to warrant remand on the basis of an allegedly ineffective waiver.  *Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 143 (1st Cir. 1987).

In this case, the plaintiff contends that the administrative law judge "did not inform [her] of why an attorney was useful in such a proceeding," and that her waiver was ineffective as a result, citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981).  Itemized Statement at 2.  Assuming *arguendo* that the First Circuit would adopt such a requirement — an unlikely event given that written notice and a much less extensive colloquy at the start of the hearing were found to be sufficient in *Evangelista*, 826 F.2d at 142-43 & n.5 — the fact that the discussion between the plaintiff and the

---

regulations, case authority and page references to the administrative record.

administrative law judge took place off the record makes it impossible to determine whether the administrative law judge in fact provided this information orally to the plaintiff, who has chosen not to provide any evidence that the administrative law judge did not do so. This information was provided to the plaintiff in writing before the hearing. Record at 30. Combined with the colloquy on the record, I believe that the plaintiff was sufficiently advised to render her waiver valid.

Even if that were not the case, however, the plaintiff does not attempt to make any showing that an attorney could and would have adduced specific evidence that might have altered the result.[2] *See Steward v. Barnhart*, 222 F.Supp.2d 60, 63 (D. Me. 2002). She relies instead on an argument that the administrative law judge failed to develop the record adequately, which is a possible alternative way in which to meet the First Circuit's prejudice or unfairness requirement. *Id*. Specifically, the plaintiff contends that "the record is full of gaps" in the medical records after October 21, 2003, the date of her application, and that "the documentation of application of the [mandatory special technique process assessing the severity of the mental impairments] does not appear in the decision." Itemized Statement at 3. She also relies on the testimony of the medical expert that "the record was not sufficient to allow him to assess the severity of [her] impairments" and that "the records regarding the trigeminal neuralgia . . . were not sufficiently detailed as to date, intensity, frequency and cause." *Id*. at 4. She suggests that the administrative law judge was therefore required to "obtain[] a physical exam on these issues" and to obtain unspecified further medical records. *Id*. at 4-5. Finally, she asserts that "there is no indication that the psychologist [who performed the post-hearing examination requested by the administrative law judge] was ever provided with the existing medical records documenting anxiety . . . or the records regarding the white matter changes that were discussed as possibly reflecting ministrokes." *Id*. at 5. She also faults the administrative law judge for discussing "envelopes being

---

[2] When asked at oral argument, counsel for the plaintiff speculated that an attorney could have presented evidence of ongoing treatment (*continued on next page*)

given to [her] to send in further records" with "no indication whether that was ever done." *Id*. at 6.

As to the last assertion, it is the plaintiff's burden to establish severity at Step 2 of the sequential

evaluation process, and it surely is within the scope of that burden to expect the plaintiff herself to

submit evidence with respect to whether or not she was given any envelopes in which to submit further

medical records as specified by the administrative law judge.[3]

At the close of the hearing, the plaintiff was fully informed about the medical providers from

whom she should seek additional medical records; she did not suggest that she would be unable to do

so.  Record at 300-01.  Even now, the plaintiff offers no evidence that she was unable to do so or that

she did not in fact do so.  Nothing in the authority cited by the plaintiff required the administrative law

judge to do more.  In *Seavey v. Barnhart*, 276 F.3d 1 (1st Cir. 2001), the First Circuit referred in

general terms to the duty of an administrative law judge in a Social Security case "to investigate and

develop the facts and develop the arguments both for an against the granting of benefits" in the course

of rejecting an argument that the commissioner should be treated like any other litigant in the

administrative appeal process.  *Id*. at 8.  In *Heggarty v. Sullivan*, 947 F.2d 990 (1st Cir. 1991), the

administrative law judge "specifically had informed claimant that he would arrange to obtain" certain

medical records but did not do so, and the First Circuit also found it significant that the decision had

been made at Step 5 of the sequential procedure, where the burden of proof shifts to the commissioner.

 *Id*. at 997-98.  Finally, in my Report and Recommended Decision in *Billings v. Apfel*, 1999 WL

33117142 (D. Me. May 13, 1999), no medical expert testified and a treating physician had recorded a

suspicion that the claimant suffered from arthritis of the spine and knees, a disability on which the

---

for trigeminal neuralgia, "reflecting the seriousness of those problems."  He did not point to any specific, existing evidence.

[3] The hearing was held by teleconference, with the administrative law judge in Portland and the plaintiff in Bangor.  Record at 276. The administrative law judge was not in a position to know whether the hearing assistant in Bangor actually gave the plaintiff the envelopes to which the administrative law judge referred.  Record at 301.  The plaintiff did tell the administrative law judge that she would get these medical records. *Id*. at 281.

plaintiff based her claim (at least as to her knees), yet the administrative law judge rebuffed an offer by the claimant's counsel that she undergo additional x-rays and did not attempt to follow up on the treating physician's note, *id*. at \*2-\*3.  Counsel for the plaintiff has identified no such open question in any treating physician's records in this case.

With respect to the requirement that use of the psychiatric review technique be indicated in the administrative record, the administrative law judge found no mental impairment at all.  Record at 13. She specifically based this conclusion on the results of the psychological examination that she had arranged.  *Id*. at 14.  The clinical psychologist who conducted that examination concluded that the plaintiff's ability to perform "mental work related activities"  was never restricted more than slightly. *Id*. at 14, 270-73.[4]    Since the administrative law judge determined that there was no mental impairment, and the psychologist's report supports this conclusion, *id*. at 268, there was no need to document the use of the special psychiatric review technique.  20 C.F.R. § 416.920a(b) ("[W]e must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).  . . .   If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.").[5]  Similarly, the plaintiff suggests no specific way in which the psychologist's examination was affected or hampered by the possible lack of "the existing medical records documenting anxiety."  Itemized Statement at 5.  The plaintiff told the psychologist that "I have a lot of anxiety and panic attacks every once in a while," the psychologist specifically questioned her

---

[4] The only entries on the Medical Assessment of Ability to do Work-Related Activities (Mental) form completed by the psychologist where the degree of limitation rises to the level of "slight" are "Demonstrate reliability," "Interact with supervisor(s)" and "Deal with work stresses."  Record at 271, 273.

[5] At oral argument, counsel for the plaintiff contended that the regulations require an administrative law judge to use the psychiatric review technique in the course of evaluating whether a claimant has a severe mental impairment, citing 20 C.F.R. § 404.1520a, which (*continued on next page*)

about anxiety symptoms, and the psychologist gave the plaintiff an Axis I diagnosis of "[g]eneralized anxiety features (non-clinical)."   Record at 264, 265, 268.   Something more than speculation is required from the plaintiff at this point, but that is all she offers.  Nor does she explain why the testing performed by the psychologist would not have revealed any work-related impairments caused by the possible "mini-strokes," which she mentioned to the psychologist.  Record at 265.

The plaintiff cites no authority for her assertion that the administrative law judge was required to "obtain[] a physical exam on" the plaintiff's claimed trigeminal neuralgia, muscle spasms, or diabetic neuropathy.[6] Itemized Statement at 4-5.[7] An administrative law judge has discretion whether to order a consultative examination.   *See* 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.")(citation and internal punctuation omitted).  A failure to order such an examination has been held not to constitute an abuse of discretion unless the examination was necessary to enable the administrative law judge to determinate disability. *See, e.g, Bishop v. Barnhart,* 78 Fed.Appx., 265, 268 (4th Cir. 2003) ("[A] consultative examination is required when the evidence as a whole is insufficient to support a decision.  That simply is not the case here." )(citation omitted); *McCuller v. Barnhart*, 72 Fed.Appx. 155, 160 n.5 (5th Cir. 2003)

---

is identical to 20 C.F.R. § 416.920(a), the regulation applicable in this case.  The language of the regulation quoted in the text can only reasonably be read to require documentation of the use of the technique when a severe impairment has been found to exist.

[6] At oral argument, counsel for the plaintiff cited my recommended decision in *Billings* as authority for this position.  As noted earlier in this recommended decision, the administrative law judge in *Billings* was presented with evidence that strongly suggested that the claimant suffered from arthritis of the spine and knees before her date last insured and not only failed to order further testing but also declined the offer of the claimant's counsel that she undergo further diagnostic testing.  None of these factors is present in this case.

[7] When asked by the administrative law judge, the plaintiff mentioned only the diabetic neuropathy and trigeminal neuralgia as impairments.  Record at 283-84.  She did not mention muscle spasms at the hearing, nor are they mentioned in her application for (*continued on next page*)

("[T]he ALJ's duty to undertake a full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.") (Citation and internal punctuation omitted).  Here, the administrative law judge was expecting the plaintiff to submit additional medical records and would most likely make her discretionary decision about ordering a consultative examination thereafter.  She informed the plaintiff that the record would be held open until February 6, 2006, eighteen days after the hearing, for the submission of these records and also informed her that she could call and request additional time.  Record at 276, 280, 281.  The plaintiff's apparent failure to follow through cannot serve as the basis for remand in this case.

### B.  Duration and Severity

The plaintiff next contends that the administrative law judge improperly determined that the plaintiff failed to demonstrate that her medical conditions "met the durational and severity requirements" when both her diabetes and her trigeminal neuralgia "had existed for more than 12 months" and "there is no indication at all in this record that they are not anticipated to be ongoing into the future."  Itemized Statement at 7.  I do not see any indication that the duration of either impairment played any part in the administrative law judge's decision.  Finding 3 does state that "[t]he claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921)[,]" but the following discussion makes clear that the administrative law judge never considered the duration requirement because she found that neither impairment significantly limited the plaintiff's ability to perform basic work-related activities  at all.  Record at 13-15.  Contrary to the

---

benefits.  *Id*. at 67, 75.

plaintiff's characterization, Itemized Statement at 7, I see no suggestion that the administrative law judge was "confused" on this point.

With respect to the Step 2 severity requirement, the plaintiff attacks the administrative law judge's observation that the medical expert who testified at the hearing "agreed with the opinions of the State agency medical consultants" because the administrative law judge "failed to say with regard to what issue the agreement was or what the significance of that agreement might be" and because of the lack of any indication in the state-agency review form on which she relies that the reviewing physician considered the diabetic neuropathy in the plaintiff's hands. *Id*. at 7-8. The only "agreement" between the medical expert and state-agency reviewing physician apparent in the transcript of the hearing is that the plaintiff continued to be non-compliant with management of her diabetes. Record at 298. This is significant because the administrative law judge concluded that the non-compliance was inconsistent with the existence of a severe impairment. *Id*. at 15. So limited, I see no problem with the observation that the medical expert agreed with the state-agency reviewing physician. As for the neuropathy in the plaintiff's hands, the plaintiff's statement of errors fails to cite the page or pages in the administrative record where the medical evidence of diabetic neuropathy in the plaintiff's hands exists. The only reference I found in my review of the entire record is in an emergency department record dated September 4, 1998, well before the plaintiff's claimed onset date of January 10, 2000, *id*. at 11, in which the treating physician noted that the plaintiff "states she has had numbness in both hands, primarily in the left, and numbness in her left side. This has been going on off and on for months[,]" *id*. at 256. Numbness in the hands is mentioned again in the subsequent medical records only once,[8] and the 1998 numbness was never characterized by any medical

---

[8] A medical student recorded on March 7, 2003 that the plaintiff complained of intermittent numbness in her left hand upon waking which had been going on for one month. Record at 174. The physician treating the plaintiff that day did not refer to this numbness and there is no later mention in the medical records.

professional as neuropathy, as far as I can tell from the records.  This is simply insufficient medical evidence to support the plaintiff's conclusion that the state-agency physicians who reviewed her medical records in January 2004 and June 2004, *id*. at 128, 206, were not provided with medical evidence of diabetic neuropathy in the plaintiff's hands and that their assessments accordingly must be disregarded.

On the showing made, the plaintiff is not entitled to remand on the issue of the severity of her impairments.

### C.  Pain

The plaintiff next contends that the administrative law judge "was required to determine the extent that [the plaintiff] has or had pain of sufficient intensity or frequency to interfere with" her abilities to understand, carry out and remember instructions and respond appropriately to supervision, coworkers and customary work pressures in a routine setting, and that her failure to include such an analysis in her decision requires remand.  Itemized Statement at 9.  The authority cited by the plaintiff in this portion of her itemized statement refers to the consideration of a claimant's allegations of subjective pain at Step 4 and Step 5 of the sequential review process.  In this case, the administrative law judge reached only Step 2.  To the extent that subjective pain is appropriately considered at Step 2, *see, e.g.,* Social Security Ruling 96-7p ("SSR 96-7p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp.2007), at 135-36, the testimony cited by the plaintiff, Itemized Statement at 9, asserts that the pain arises from her trigeminal neuralgia, Record at 288.  The plaintiff testified that she was taking medication for the pain and stated "I feel better now[,]" *id*. at 284, and that the pain "comes and it goes[,]" occasionally requiring her to "stop everything if it gets bad[,]" *id.*

at 286, although she takes prescribed medication on such occasions,[9] *id*. at 284, and that she could not

work "with [her] head the way it is[,]" *id*. at 287.

Contrary to the plaintiff's argument, Itemized Statement at 9-11, the administrative law judge's

discussion of her testimony about her subjective pain was not inconsistent with either SSR 96-7p,

*Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19 (1st Cir. 1986), or *McDonald v. Heckler*,

588 F. Supp. 1400 (D. Me. 1984).  The administrative law judge determined that the plaintiff suffered

from "neuralgias," but that they did not constitute a severe impairment.  Record at 13-15.  Her finding

on the plaintiff's credibility was a necessary step in evaluating whether those impairments were

severe.

> Once the adjudicator has determined the extent to which the
> individual's symptoms limit the individual's ability to do basic work
> activities by making a finding on the credibility of the individual's
> statements, the impact of the symptoms on the individual's ability to function
> must be considered along with the objective medical and other evidence, first
> in determining whether the individual's impairment or combination of
> impairments is "severe" at step 2 of the sequential evaluation process[.]

SSR 96-9p at 135-36.  Factors to be used in assessing credibility include medical signs and

laboratory findings, medical opinions from treating or examining sources and statements about

treatment and response and daily activities.  *Id*. at 137.[10]   *Avery* speaks of the consideration of a

claimant's allegations of pain that must be made "before a complete evaluation of this individual's

RFC can be made."  797 F.2d at 23.  The opinion makes clear that a finding of credibility is necessary

to "permit a finding of disability where the medical findings alone would not."  *Id*. at 21.  Even then,

the statements of the claimant must not be "inconsistent with the objective findings."  *Id.* In *McDonald*,

---

[9] The plaintiff did not answer the administrative law judge's question "How long does the pain last?"  Record at 286.

[10] Because daily activities are one of the factors administrative law judges are directed to consider in assessing credibility, the plaintiff's citation to authority for the proposition that "activities of daily living have only a tangential relationship to RFC[,]" Itemized Statement at 11 n.9, is irrelevant.  Residual functional capacity is considered at Step 4 of the sequential evaluation process; this case concerns Step 2.

Judge Carter of this court found that the claimant's complaint of pain was "confirmed by his treating physician," 588 F. Supp. at 1402, and that the medical expert who testified at the hearing before the administrative law judge seemed to agree with the treating physician, *id*. The only issue in that case was whether the claimant's subjective pain was related to a medically demonstrable impairment. *Id.* at 1403.

Here, the administrative law judge does not appear to question the existence of a relationship between the plaintiff's neuralgias and her complaints of intermittent pain. Rather, the administrative law judge found that "[t]he medical evidence does not fully support the claimant's subjective complaints with respect to the alleged severity," noted that 20 C.F.R. § 416.929 and Social Security Ruling 95-7p required her to consider other specific evidence, and proceeded to do so. Record at 14-15. She noted that the plaintiff's "treating neurologist has stated that her pain complaints are controlled with" medication he had prescribed and that the plaintiff's allegations of restricted daily activities were inconsistent with what she reported to treating physicians and to Dr. Gates, the examining psychologist. *Id*. at 15. This characterization of the record is correct and sufficient to support the administrative law judge's rejection of the plaintiff's testimony that the pain from her trigeminal neuralgia disabled her from any and all work activities. Contrary to the plaintiff's suggestion, there is no statutory or regulatory requirement that the administrative law judge address separately each factor to be considered in evaluating credibility or each work activity that might be affected by a plaintiff's allegations of pain. The case law cited by the plaintiff does not create such a requirement.

### D.  Period of Disability

Finally, the plaintiff contends, in an argument so brief as to raise the question whether it is properly presented, that the administrative law judge "was obligated to consider the possibility of a

closed period of disability[,]"apparently because the plaintiff testified that her "condition had improved." Itemized Statement at 11. No authority is cited for this argument, nor is any citation provided to the page in the record where such testimony appears. In this court, issues asserted in conclusory fashion without developed argumentation will be considered waived. *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F.Supp.2d 326, 355 (D. Me. 2003); *see also Dimarco-Zappa v, Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001). Even if I were to ignore this waiver, this case is distinguishable from those in which it was suggested that an administrative law judge may be obliged, under certain circumstances, to consider the possibility of an award of benefits for a closed period even where, as here, the claimant has not requested it. *See, e.g., Van Horn v. Heckler*, 717 F.2d 1196, 1200 (8th Cir. 1983), in which there was uncontradicted evidence of disability within a certain closed period, *id*. at 122; here, the plaintiff points to no such one-sided evidence.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of October, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

13